IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | |
|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILTY, <br><br> Plaintiff, <br><br> v. <br><br> THE GIPSON COMPANY, and <br><br> THE PADDOCKS DEVELOPMENT L.P., <br><br> Defendants. | Case No. _____ <br><br> COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND CIVIL PENALTIES PURSUANT TO 33 U.S.C. § 1251, ET SEQ. |

## COMPLAINT

1. Public Employees for Environmental Responsibility ("PEER"), a Washington, D.C., non-profit corporation with a field office in Tennessee, files this action for declaratory and injunctive relief pursuant to 33 U.S.C. § 1365(a)(1) against the Gipson Company ("Gipson") and The Paddocks Development L.P. ("Paddocks") (collectively, "Defendants"), for Defendants' failure to comply with the terms and conditions of permits issued pursuant to 33 U.S.C. §§ 1341 and 1344 of the Clean Water Act, 33 U.S.C. § 1251, et seq. ("CWA"), and for the discharge of a pollutant without a permit in violation of 33 U.S.C. § 1311(a).

2. Specifically, Defendants have failed to comply with the mitigation plan established for their activity as required by Aquatic Resource Alteration Permit No. 07-129 ("ARAP" or "§ 401 Certification"). The Tennessee Department of Environment and Conservation ("TDEC") issued the ARAP on October 17, 2007, pursuant to 33 U.S.C. § 1341, and the ARAP served to fulfill the CWA § 401 Certification requirement for Defendants' CWA § 404 fill activities. The ARAP imposed a number of stream and wetland mitigation conditions on the project. However, it is

apparent that Defendants never fully met the mitigation requirements within the designated time period, and that Defendants continue to fail to meet the conditions today.

3. Defendants failed and continue to fail to comply with the U.S. Army Corps of Engineers Permit No. 2006-00922, dated November 15, 2007 ("§ 404 Permit"), which requires compliance with any applicable § 401 certification (here, the ARAP) and accompanying mitigation plan.

4. The ongoing discharge of pollutants without a § 402 permit violates CWA § 301(a), 33 U.S.C. § 1311(a).

5. Because of these ongoing Clean Water Act violations, which negatively impact water quality and contravene the letter and spirit of the CWA, Plaintiff seeks declaratory and injunctive relief, the imposition of civil penalties, and an award of litigation costs including reasonable attorney and expert witness fees pursuant to 33 U.S.C. § 1365.

## I. THE PARTIES

6. Plaintiff Public Employees for Environmental Responsibility is a national non-profit alliance of local, state, and federal scientists, law enforcement officers, land managers, other professionals, and members of the general public dedicated to upholding environmental laws and values. PEER is a Washington, D.C., non-profit corporation. PEER maintains a field office in Tennessee, is registered in Tennessee as a 501(c)(3) nonprofit corporation, and is authorized to do business in Tennessee. PEER's organizational purposes include assuring the enforcement of federal and state laws that protect streams and wetlands. In Tennessee, PEER has been and will continue to work to uphold the Clean Water Act protections for jurisdictional streams and wetlands. Plaintiff PEER files this action on its own behalf and on behalf of its members.

7. PEER and its members have preservation and conservation interests in ensuring the health of Tennessee's streams and wetlands, and in guarding against inadequate and/or failed

mitigation efforts. PEER and its members are actively engaged in protecting Tennessee's wetlands, streams, and rivers through conservation and preservation efforts. PEER has members who live on Stoners Creek downstream of The Paddocks development, paddle the creek regularly, enjoy observing the wildlife that depends on the creek, participate in regular creek cleanups, and perform stream surveys (including invertebrate sampling) on Stoners Creek a few times per year. Other PEER members live near and/or use water bodies further downstream, such as the Cumberland River.

8. Wetlands provide numerous values and functions, including protecting and improving water quality, flood control, maintaining surface water flow during dry periods, increasing aesthetic values, and providing fish and wildlife habitat. Functional streams and wetlands increase the survivability of surrounding riparian vegetation (e.g. trees, shrubs, and grasses), which in turn stabilizes stream banks and stops erosion. Defendants' failure to meet the conditions of the ARAP, including the failure to ensure survival of trees and the continued release of pollution into public waters without a permit, injures PEER and its members' interests in enjoying and protecting Tennessee's streams and wetlands.

9. As explained in more detail below, the failure to meet the conditions of the ARAP impacts the wetlands and waterways surrounding and downstream of The Paddocks development, specifically two unnamed tributaries of Stoners Creek and 1.23 acres of jurisdictional wetlands. PEER and its members who use, enjoy, and work to conserve these waterways and wetlands are being adversely affected and injured, and – unless the relief requested herein is granted – will continue to be adversely affected and injured by Defendants' failure to comply with the Clean Water Act.

Page 3 of 11

Case 3:15-cv-00020   Document 1   Filed 01/07/15   Page 3 of 11 PageID #: 3

10. Defendant Gipson is a for-profit corporation organized under the laws of the State of Georgia with its principal office located at 15 Piedmont Center, Suite L-150, Atlanta, GA 30305. Gipson originally owned the relevant property in Mt. Juliet, Wilson County, Tennessee and is the entity that applied for and received the ARAP (§ 401 Certification) and § 404 Permit. Gipson is a "person" subject to suit under CWA § 505.

11. Defendant Paddocks is a for-profit corporation organized under the laws of the State of Tennessee, with its principal office located at 1600 Division St., Suite 700, Nashville, TN 37203-2771. Paddocks currently owns the relevant portions of the property.

12. Both Defendants are responsible for complying with federal law, carrying out the terms and conditions of the ARAP, and ensuring that no fill material or pollutants are released into the nation's waters without a permit under the Clean Water Act.

## II. JURISDICTION AND VENUE

13. This Court has jurisdiction over this matter pursuant to 33 U.S.C. § 1365(a) of the Clean Water Act and 28 U.S.C. § 1331, federal question jurisdiction.

14. An actual, justiciable controversy exists between the Plaintiff and the Defendants. The requested relief is proper under 28 U.S.C. §2201, 28 U.S.C. §2202, and 33 U.S.C. §1365.

15. Venue is properly vested in this Court under 33 U.S.C. §1365(c)(1) because this is the judicial district in which the violation is taking place.

16. Plaintiff, pursuant to 33 U.S.C. § 1365(b), gave notice to Defendants, to the Administrator and the Region 4 Administrator of the Environmental Protection Agency, and to the Tennessee Department of Environment and Conservation of the violations alleged in this Complaint by letter dated June 25, 2014, sent by U.S. certified mail, return receipt requested. More than sixty days have elapsed since notice was properly served on the Defendants. The

violations complained of in the notice letter are continuing and have not been substantively remedied as of the date of the filing of this Complaint.

### III. LEGAL BACKGROUND

17. The objective of the CWA is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters. 33 U.S.C. § 1251(a). It is illegal to discharge pollutants into waters of the United States, including wetlands, without a permit. 33 U.S.C § 1311(a). To ensure that streams and wetlands are not lost in development and construction projects, the Clean Water Act prohibits the discharge of dredged or fill material into waters of the United States unless authorized pursuant to § 404 of the Act. Other pollutants may only be discharged into waters of the United States with a permit pursuant to § 402 of the CWA. 33 U.S.C. §1342.

18. Before a permit applicant can obtain a § 404 permit from the U.S. Army Corps of Engineers, it must present the Corps with CWA § 401 certification from the State; in this case, an ARAP from TDEC. The § 401 certification process ensures that the State reviews a permittee's activity to make certain that it complies with both the federal Clean Water Act and Tennessee water quality standards.

### IV. GENERAL ALLEGATIONS

19. On October 17, 2007, TDEC granted Gipson an ARAP, providing § 401 Certification to fill streams and wetlands in order to construct a commercial development (ARAP No. NRS 07.129, with an expiration date of October 16, 2012). The permitted activity included the placement of fill in 1.23 acres of jurisdictional wetland and 1,589 linear feet of streams.

20. The § 401 Certification set forth a number of conditions to be met for stream and wetland mitigation purposes. The conditions included: the protection of all streams, springs, and

wetlands "prior, during[,] and after construction until the area is stabilized" (Condition 2); the prevention of discharges causing visible solids, bottom deposits, or turbidity that impair the usefulness of the waters for uses including fish and aquatic life (Condition 3); appropriate steps to prevent chemical pollution into state waters (Condition 4), certain enhancements in particular areas, including tree plantings with a 5 year survival rate of at least 75% (Condition 8); and the placement of certain stream bank and in-stream habitat structures in the mitigated channels that must meet specified performance criteria (Conditions 9 and 11).

21. The Army Corps of Engineers subsequently granted Gipson a CWA § 404 permit for the same activity on November 15, 2007 (Permit No. 2006-00922). The § 404 permit explicitly adopted the § 401 Certification's conditions as "special conditions to this permit." § 404 Permit, General Condition No. 5. The § 404 Permit itself also contains similar conditions, such as Special Condition 5 requiring buffers and vegetation plantings, Special Condition 6 requiring stream bank and in-stream habitat structures, and Special Conditions 8 and 10 requiring monitoring for five years to ensure the effectiveness of mitigation measures.

22. After receiving their permits, Defendants placed fill material in streams and wetlands at the site to stabilize it for construction of a "big box" development, with stores such as Lowes, Super Walmart, and other smaller shops and restaurants.

23. Plaintiff does not know the precise date that the initial mitigation efforts were concluded, but the existence of a "post mitigation monitoring repot" from July 2009 suggests that this occurred in the spring or early summer of 2009.

24. On January 14, 2011, TDEC issued Gipson a Notice of Violation for noncompliance with items associated with Conservation Areas 1 and 2.

25.     Defendants purportedly took corrective actions in the spring and summer of 2012 to remedy the violations, and in October 2012 filed a report stating that all violations were remedied. This report includes dates when specific mitigation measures required by the permit were initially installed, as well as the dates of corrective action, including the installation of new mitigation measures and vegetation plantings in November and December of 2011.

26.     On November 20, 2013, a survey of the impact and mitigation site by Barry Sulkin and John McFadden from PEER found a number of continued violations of the mitigation conditions of the Certification and Permit.

27.     On Wednesday November 26, 2014, John McFadden of PEER visited the Paddocks site along with researchers Tyler Skelton from PEER and Will Caplenor from the Tennessee Environmental Council. They surveyed the streams on site and continued to note the presence of an orange colored substance downstream of the springs and adjacent to Mt Juliet Road. In addition, they walked along the stream located behind the Walmart and noted failed in-stream and bank stabilization structures.

28.     An unnatural orange growth or precipitate appeared to be leaching from and/or be caused by fill material downstream of areas designated in Gipson's permit application as STR 1, SPR 1, and STR 4, continuing downstream for approximately 1,255 feet in violation of Conditions 2, 3, and 4 of the § 401 Certification and in violation of CWA § 402, which governs permits for point source discharges of pollutants.

29.     Tree survival rates were below 75% in Conservation Area 1 (in line detention facility), Conservation Area 2 (STR 7, 8, 9, 10 and 11), and the Paddocks Area in violation of Condition 8 of the § 401 Certification and Special Condition 5 of the § 404 Permit. If the trees had initially survived as required by Condition 11 of the ARAP, the trees would still be present in these areas.

Moreover, Defendants are responsible for ensuring a 75% survival of the trees that they planted in 2011 to address the deficiencies identified in the NOV.

30. Failure of in-stream enhancements in mitigated channels was observed, particularly on STR 7, in violation of Conditions 9 and 11 of the § 401 Certification. These failures include: coir fiber roll structure failure and resulting stream bank instability/erosion; grade control structure (waterfall) failure; stream bank undercutting below aforementioned grade control structure; log drop failure, with water cutting out on the right side of the bank around the log drop; and a lack of vegetative cover/root structure in the reconstructed stream channel.

31. Thus, to the best knowledge and belief of PEER, the mitigation areas are in violation of Conditions 2, 3, 4, 8, 9, and 11 of the § 401 Certification, thereby violating the Tennessee Water Quality Control Act, the CWA (33 U.S.C. § 1251 et. seq., including 33 U.S.C. §§ 1341 and 1344), and related regulations. The orange growth or precipitate also constitutes the release of pollutants into Waters of the United States without a permit in violation of CWA § 402.

32. On June 25, 2014, Plaintiff submitted a Notice of Intent to Sue to EPA and Defendants.

33. On July 21, 2014, Defendants responded to the Notice of Intent to Sue alleging that they had complied with all required wetland mitigation conditions and with their permits.

34. Plaintiffs conducted a search on TDEC's online permit website and found no active § 402 permit for the site authorizing the discharge of pollutants.

## V. FIRST CAUSE OF ACTION

35. Plaintiff hereby incorporates all of the above allegations as if they were re-alleged herein.

36. Defendants' failure to comply with numerous stream and wetland mitigation conditions as required by the § 401 Certification (ARAP) and § 404 Permit is ongoing. The continued inadequacy of the mitigation site has caused and is causing or contributing to degradation of the

waterways on and surrounding the site and downstream waters in Tennessee, and continues to fail to compensate for the direct impacts of the Paddocks construction. If not enjoined, Defendants' failure will continue to injure Plaintiff and its members.

37. Title 33 U.S.C. § 1365(a)(1) of the CWA authorizes any citizen to commence a civil action in the appropriate federal court against any person alleged to be in violation of the Act.

38. Title 33 U.S.C. § 1365(a) of the CWA authorizes the district court, without regard to the amount in controversy or the citizenship of the parties, to enforce the requirements of the Act and apply any appropriate civil penalties of up to $37,500 per day for each violation. 33 U.S.C. §§ 1365(a); 1319(d); 40 C.F.R. § 19.4.

## VI. SECOND CAUSE OF ACTION

39. Plaintiff hereby incorporates all of the above allegations as if they were re-alleged herein.

40. Defendants' continued discharge of pollutants into waters of the United States without a valid § 402 permit is a violation of the CWA.

41. Title 33 U.S.C. § 1365(a)(1) of the CWA authorizes any citizen to commence a civil action in the appropriate federal court against any person alleged to be in violation of the Act.

42. Title 33 U.S.C. § 1365(a) of the CWA authorizes the district court, without regard to the amount in controversy or the citizenship of the parties, to enforce the requirements of the Act and apply any appropriate civil penalties of up to $37,500 per day for each violation. 33 U.S.C. §§ 1365(a); 1319(d); 40 C.F.R. § 19.4.

## VII. REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that this Court:

A.      Declare that Defendants have violated the terms and conditions of the § 401 Certification (ARAP) and § 404 Permit, and are violating the Clean Water Act by discharging fill materials and pollutants into territorial waters without a valid § 402 permit.

B.      Declare that Defendants' failure to abide by the terms and conditions of the ARAP and § 404 Permit and their release of pollutants into Waters of the United States violate the Clean Water Act, including 33 U.S.C. §§ 1311, 1341, and 1344.

C.      Enter judgment imposing all appropriate civil penalties upon Defendants, up to and including $37,500.00 per violation for each day of violation of the Clean Water Act, as provided by 33 U.S.C. §1319 and adjusted for inflation by 40 C.F.R. § 19.4.

D.      Grant declaratory and injunctive relief sufficient to (1) compel Defendants to restore and maintain the quality of the jurisdictional waters by remedying deficiencies in mitigation measures and stopping the ongoing discharge of pollutants, (2) compensate for the harm caused over the period non-compliance, and (3) deter these Defendants and others similarly situated from failing to fully complete their mitigation responsibilities.

E.      Award Plaintiff its costs, expenses, expert witness fees, and reasonable attorneys' fees as provided in 33 U.S.C. § 1365.

F.      Award all other, further, and different relief that appears to the Court to be just and reasonable.

Dated this 7th day of January, 2015.

Respectfully submitted,

LEITNER, WILLIAMS, DOOLEY & NAPOLITAN PLLC

*Richard C. Mangelsdorf Jr.*
RICHARD C. MANGELSDORF, JR. BPR No. 012707
414 Union Street, Suite 1900
Bank of America Plaza
Nashville, TN 37219
615-255-7722
Fax: 615-780-2210

PAULA DINERSTEIN (*pro hac vice* pending)
D.C. Bar No. 333971
Public Employees for Environmental Responsibility
2000 P Street, NW, Suite 240
Washington, D.C. 20036
Phone: (202) 265-7337
Fax: (202) 265-4192

Page 11 of 11

Case 3:15-cv-00020   Document 1   Filed 01/07/15   Page 11 of 11 PageID #: 11