# PEER

**Public Employees for Environmental Responsibility**

2000 P Street, NW • Suite 240 • Washington, D.C. 20036 • 202-265-PEER(7337) • fax: 202-265-4192
e-mail: info@peer.org • website: www.peer.org

June 25, 2014

Gina McCarthy
Administrator, U.S. EPA
1200 Pennsylvania Avenue NW
Mail Code: 1101A
Washington, DC 20460

Heather McTeer Toney
Administrator, U.S. EPA Region 4
Sam Nunn Atlanta Federal Center
61 Forsyth Street SW
Atlanta, GA 30303

Robert Martineau, Jr., Commissioner
Tennessee Department of Environment and Conservation
312 Rosa L. Parks Ave, Tennessee Tower, 2nd Floor
Nashville, TN 37243

Mr. John H. Gipson, Sr.
Mr. Colin E. Barker
The Gipson Company
15 Piedmont Center, Suite L-150
Atlanta, GA 30305

Greer J. Cummings, Jr.
The Paddocks Development, L.P.
1600 Division St., Suite 700
Nashville, TN 37203-2771

**By Certified Mail, Return Receipt Requested**

RE: *Notice of Clean Water Act Violation and 60-day Notice of Intent to File a Citizen Suit Pursuant to 33 U.S.C. § 1365.*

Dear Gipson Company, Mr. Gipson, Mr. Barker, The Paddocks Development, L.P., Mr. Cummings, and other Addressees:

Public Employees for Environmental Responsibility ("PEER") hereby notifies the U.S. Environmental Protection Agency Administrator, the U.S. Environmental Protection Agency Regional Administrator, the Tennessee Department of Environment and Conservation ("TDEC"), the Gipson Company ("Gipson"), and The Paddocks Development L.P. ("Paddocks")

1

**EXHIBIT 1**

of its intent to sue the Gipson and Paddocks and their respective listed agents pursuant to 33 U.S.C. § 1365(b), for ongoing violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), unless within 60 days of receipt of this letter, Gipson and Paddocks cease releasing pollutants into a waterway without a CWA § 402 permit and enter into a binding agreement to promptly comply with the requirements of Aquatic Resource Alteration Permit No. 07-129 and with Department of the Army Permit No. 2006-00922.

As described fully below, PEER, based on its best knowledge and belief, alleges that Gipson and Paddocks are failing to comply with the mandatory terms and conditions of Aquatic Resource Alteration Permit Number 07-129, issued under CWA § 401 (33 U.S.C. § 1341, the State certification provision of the CWA, hereafter "§ 401 Certification") and with Department of the Army Permit No. 2006-00922 issued under CWA § 404 (33 U.S.C. § 1344, the Army dredge and fill permit, hereafter "§ 404 Permit"), which itself requires compliance with the § 401 Certification. Additionally, upon knowledge and belief, including inquiries on TDEC's "Water Resources Data Viewer" which allows citizens to search for state water permits, Paddocks is violating the CWA by releasing pollutants into an unnamed tributary of Stoners Creek without a § 402 permit. These violations negatively impact water quality and contravene the letter and spirit of the CWA.

PEER is a Washington, D.C. based 501(c)(3) non-profit organization. PEER maintains an office in Tennessee and is authorized to do business in Tennessee. PEER's organizational purposes include assuring the enforcement of federal and state laws aimed at protecting rivers, streams, and wetlands. In Tennessee, PEER works for the benefit of the public to ensure the protection of streams and wetlands under the CWA, including through adequate mitigation of development impacts. PEER members regularly use waters downstream from the site affected by Gipson's and Paddocks' failure to comply with the CWA. PEER, on its own behalf and on behalf of its members, intends to initiate legal action under the CWA citizen suit provision against Gipson and Paddocks unless they cease releasing pollutants into the unnamed tributary to Stoners Creek without a CWA § 402 permit and enter into a binding agreement to promptly comply with the mitigation requirements of the § 401 Certification.

### I.  Legal Background.

The objective of the CWA is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters. 33 U.S.C. § 1251(a). Under CWA § 301, discharge of a pollutant from a point source into waters of the United States is illegal without a National Pollution Discharge Elimination System (NPDES) Permit under CWA § 402. To ensure that wetlands are not lost in development and construction projects, the Clean Water Act also prohibits the discharge of dredged or fill material into waters of the United States unless authorized pursuant to § 404 of the Act. Under § 401 of the Clean Water Act, in order to obtain

2

a § 404 permit from the U.S. Army Corps of Engineers, the applicant must present the licensing agency with a certification from the State. The § 401 certification process ensures compliance with the Clean Water Act and state water quality standards.

The CWA requires that sixty days prior to the filing of a citizens' suit in federal district court, the complainant provide notice of the alleged violations to the alleged violators, the Environmental Protection Agency, and the state in which the alleged violations occur. 33 U.S.C. § 1365(b)(1). Through this letter, PEER fulfills that requirement.

## II.     Factual Background and the CWA Violations.

In 2007, Gipson Company requested to place fill in 1,589 linear feet of unnamed tributaries to Stoner Creek and in 1.23 acres of jurisdictional wetland as part of a proposed commercial development in Mt. Juliet, Wilson County, Tennessee known as "The Paddocks." The Paddocks Development, L.P. now owns the relevant portions of The Paddocks. Under the CWA, the placement of such fill requires a § 404 permit from the Army Corps of Engineers. Under § 401 of the Clean Water Act, in order to obtain such a § 404 permit, the applicant must obtain a certification from the State to ensure compliance with the Clean Water Act and the State's water quality standards.

The § 404 Permit that Gipson obtained from the Army Corps of Engineers originally required the Gipson Company to complete the authorized work by November 15, 2007 (Permit No. 2006-00922), and included conditions requiring the company to ensure the success of mitigation measures for a further five years. The Corps subsequently extended this date to November 15, 2012 through a handwritten addendum to the original paperwork. The corresponding § 401 Certification (Aquatic Resource Alteration Permit Number 07-129, dated October 17, 2007), was issued by TDEC pursuant to the CWA, the Tennessee Water Quality Control Act (T.C.A. § 69-3-101, *et. seq.*), and other supporting regulations, and in conformance with approved plans, specifications, data, and other pertinent information.

The § 404 Permit required compliance with the conditions of the corresponding § 401 Certification, explicitly adopting those § 401 conditions "as special conditions to this permit." § 404 Permit, General Condition No. 5. The § 401 Certification approved the fill amounts that Gipson requested subject to several conditions. These included: the protection of all streams, springs, and wetlands "prior, during[,] *and after construction until the area is stabilized*" (Condition 2) (emphasis added); the prevention of discharges causing visible solids, bottom deposits, or turbidity that impair the usefulness of the waters for uses including fish and aquatic life (Condition 3); appropriate steps to prevent chemical pollution into state waters (Condition 4); certain enhancements in particular areas, including tree plantings with a 5 year survival rate of at least 75% (Condition 8); and the placement of certain in-stream habitat structures in the mitigated channels that must meet specified performance criteria (Conditions 9 and 11). The § 404 Permit itself also contains similar conditions, such as Special Condition 5 requiring buffers

3

and vegetation plantings, Special Condition 6 requiring in-stream habitat structures, and Special Conditions 8 and 10 requiring monitoring for five years to ensure the effectiveness of mitigation measures.

TDEC issued Gipson a Notice of Violation on January 14, 2011 for noncompliance with items associated with Conservation Areas 1 and 2 and the Spring 3 area. Although corrective actions were apparently performed in 2012, a February 2014 inspection of the site by PEER and a follow-up visit later that month revealed several ongoing violations, including:

- An unnatural orange precipitate that appears to be leaching from fill material downstream of STR 1, SPR 1, and STR 4, continuing downstream for approximately 1,255 feet in violation of Conditions 2, 3, and 4 of the § 401 Certification and in violation of CWA § 402, which governs permits for point source discharges of pollutants;

- Tree survival rates below 75% in Conservation Area 1 (in line detention facility), Conservation Area 2 (STR 7, 8, 9, 10 and 11), and the Paddocks Area in violation of Condition 8 of the § 401 Certification and Special Condition 5 of the § 404 Permit;

- Failure of in-stream enhancements in mitigated channels, particularly on STR 7, in violation of Conditions 9 and 11 of the § 401 Certification. These failures include:
    - Coir fiber roll structure failure and resulting stream bank instability/erosion
    - Rock grade control drop structure (waterfall) failure. Stream has undercut the structure and is now flowing under the structure.
    - Stream bank undercutting below aforementioned rock grade drop control structure.
    - Log drop failure. Water is cutting out right side of bank around log drop.
    - Lack of vegetative cover/root structure in the reconstructed stream channel.

Thus, to the best knowledge and belief of PEER, the mitigation area is in violation of Conditions 2, 3, 4, 8, 9, and 11 of the § 401 Certification and Special Condition 5 of the § 404 Permit, thereby violating the Tennessee Water Quality Control Act, the CWA, 33 U.S.C. §§ 1341 and 1344, 33 U.S.C. § 1251, and related regulations. The orange precipitate also constitutes the release of a pollutant into Water of the United States without a permit in violation of CWA § 402. Should Gipson and Paddocks fail to remedy these violations within 60 days of receipt of this letter, PEER intends to commence a civil action in the appropriate federal court to see that the Clean Water Act is properly enforced.

## II.    Conclusion

Gipson's and Paddocks' failure to comply with the mitigation requirements in their permits and their discharge of a pollutant into a waterway without a permit has caused and is

4

causing and contributing to degradation of wetlands and waters of the United States. PEER and its members will continue to be injured until Gipson, Paddocks, and their respective agents and officers fully comply with the CWA.

Should Gipson, Paddocks, and their respective agents fail to remedy these violations within 60 days of receipt of this letter, PEER intends to commence a civil action in the appropriate federal court to see that the Clean Water Act is properly enforced. Title 33 U.S.C. § 1365(a) of the CWA authorizes the district court, without regard to the amount in controversy or the citizenship of the parties, to enforce the requirements of the Act and apply appropriate penalties of up to $37,500 per day for each violation. 33 U.S.C. § 1365(a), § 1319(d); 40 C.F.R. 19.4. PEER will request attorney fees, remediation, full compliance with the terms of the § 401 Certification and § 404 Permit, and any other appropriate relief.

PEER is represented Kelly Poole, Paula Dinerstein, and Laura Dumais. Please direct any response to this notice of intent to sue using the contact information below.

Sincerely,

*Paula Dinerstein*

Paula Dinerstein
Laura Dumais
*Public Employees for Environmental Responsibility*
2000 P Street NW, Ste 240
Washington, DC 20036
Tel: 202-265-7337
Email: pdinerstein@peer.org
ldumais@peer.org

Kelly Poole
1 Vantage Way, Suite E-250
Nashville, TN 37228
Tel: 615-248-6500
Email: kfpoole@tectn.org

5