UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 3:15-0020 ) Judge Sharp |
| THE GIPSON COMPANY and THE PADDOCKS DEVELOPMENT, L.P., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM

In this citizen's enforcement action under the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, Defendants have filed a Motion to Dismiss, or in the Alternative, Motion to Stay (Docket No. 15), which Plaintiffs oppose (Docket No. 32). For the reasons that follow, Defendants' Motion will be denied.

**I.**

Plaintiff seeks declaratory and injunctive relief based upon Defendants' alleged failure to comply with an Aquatic Resource Alteration Permit ("ARAP") issued by the Tennessee Department of Conservation ("TDEC"), and a Section 404 permit issued by the United States Army Corp of Engineers. Those permits were issued in relation to the filling in of streams and wetlands in order for Gipson to construct the Paddocks Development in Mt. Juliet, Tennessee.

On January 14, 2011, TDEC issued Gipson a Notice of Violation of the ARAP permit. The Notice required Gipson to address specific issues and to submit a Post Construction Report that specified the work performed. It also required monitoring of all mitigation activities for five years.

1

In October 2012, and in accordance with the Notice, Gibson submitted the first of five Monitoring Reports. Additional Monitoring Reports are due in October 2015 and October 2016.

**II.**

Gipson first argues that because this action is brought in the midst of TDEC's mandated monitoring period, this Court should allow the administrative process to run its course. That is, the Court should stay this action until TDEC receives Gipson's final report in 2016 and determines whether the issues set forth in the Notice have been adequately addressed. The Court disagrees.

The CWA "'is a comprehensive water quality statute designed to restore and maintain the chemical, physical, and biological integrity of the Nation's waters.'" Ky. Waterways Alliance v. Johnson, 540 F.3d 466, 469–70 (6th Cir. 2008) (quoting PUD No. 1 of Jefferson Cnty. v. Wash. Dep't of Ecology, 511 U.S. 700, 704 (1994)). It "provides a comprehensive scheme for regulation of water pollution from point sources." Sierra Club v. Hamilton Cnty. Bd. of County Commr's, 504 F.3d 634, 646 (6th Cir. 2007).

To effectuate its purpose, "[t]he statute allows government agencies to bring administrative enforcement or judicial actions seeking injunctive relief and/or monetary penalties." Id. It also "'authorize[s] private enforcement of the [CWA's] provisions' and its implementing regulations," via citizen suits. Decker v. Northwest Envtl Defense Ctr., 133 S.Ct. 1326, 1334 (2013) (quoting Dept. of Energy v. Ohio, 503 U.S. 607, 613, n. 5 (1992)). Nevertheless, because "[c]itizen suits are merely intended to supplement, not supplant, enforcement by state and federal government agencies," lawsuits by an enforcement agencies "trump" a citizen's suit when "(1) they are initiated prior to the commencement of a citizen's suit, . . . ; (2) are diligently prosecuted,. . . ; and (3) are brought in a court of the United States or any State court." Ailor v. City of Maynardville, 368 F.3d

2

587, 590-591 (6th Cir. 2004).

Here, no agency suit is pending. Rather there is only ongoing oversight by TDEC and the Sixth Circuit has expressly "conclude[d] that the plain and unambiguous language of 33 U.S.C. § 1365(a) precludes a citizen's suit only if the Administrator of the EPA or a State is diligently prosecuting an enforcement action in a court of the United States, or a State." Jones v. City of Lakeland, 224 F.3d 518, 522 (6th Cir. 2000). Thus, in accordance with Lakeland, "a proceeding before the Tennessee Department of Environment . . . is not 'court enforcement' for purposes of §§ 1319(a) and 1365(b)." Ailor, 368 F.3d at 591.

In their reply brief, Defendants argue that merely because the statute precludes citizen suits when agency enforcement proceedings are pending in a court, this "does not *require* a court to hear a citizens suit simply because no judicial proceeding has been filed." (Docket No. 35 at 1, emphasis in original). That is, the "statute presents a limitation on citizen suits, not an automatic grant of jurisdiction," and "[i]n all cases, the exercise of federal jurisdiction is left to the sound discretion of the district court." (Id. at 2).

This Court does not have unfettered discretion to decide which cases to hear. In fact, the Supreme Court has recently reaffirmed "the principle that a federal court's obligation to hear and decide cases within its jurisdiction 'is virtually unflagging.'" Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S.Ct. 1377, 1386 (2014) (quoting Sprint Commc'n Inc. v. Jacobs, 134 S.Ct. 584, 591(2013)). Only in limited circumstances does a federal court have discretion to decline to exercise its jurisdiction.

Even in the absence of a pending court proceeding, Defendants argue that the Court should decline to decide this case either pursuant to the abstention doctrine announced in Burford v. Sun

Oil Co., 319 U.S. 315 (1943) or the primary jurisdiction doctrine. The Court is unpersuaded by either argument.

Burford abstention "is concerned with protecting complex state administrative processes from undue federal interference," but "it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." New Orleans Pub. Serv., Inc., v. Council of New Orleans, 491 U.S. 350, 362 (1989). Rather, "[w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" Id. (quoting Col. River Water Conservation Dist. v. United States, 424 U.S. 800, 814 (2012)).

"The primary jurisdiction doctrine is a rule of judicial construction which 'allows courts to refer a matter to the relevant agency whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.'" United States *ex rel.* Wall v. Circle C Constr. Co., 697 F.3d 345, 352 (6th Cir. 2012) (quoting Charvat v. EchoStar Satellite, LLC, 630 F.3d 459, 466 (6th Cir. 2010)). Under the primary jurisdiction doctrine,

> Courts have referred matters to agencies for a variety of reasons: "(1) to advance regulatory uniformity; (2) to answer a question ... within the agency's discretion; and (3) to benefit from technical or policy considerations within the agency's ... expertise." Charvat, 630 F.3d at 466 (citations and internal quotation marks omitted). "No ready formula controls its application; courts instead look to whether the purposes of the doctrine, including uniformity and accuracy gained through

4

> administrative expertise, will be especially furthered by invocation in the particular litigation." . . . Overall, in light of the federal courts' "unflagging obligation" to exercise the jurisdiction accorded them, . . . , primary jurisdiction "is limited . . . to cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme."

Id. (citations omitted).

Defendants have not shown that this case involves broad-reaching and difficult questions of state law or that proceeding with this case would somehow be disruptive to matters of substantial public concern so as to make Burford abstention appropriate. Nor have they shown that, by prosecution of this suit, TDEC's regulatory scheme will be impacted so as to make deference appropriate under the primary jurisdiction doctrine.

There is nothing suggesting that any ruling by this Court would interfere with the state's water quality standards or permitting procedures. Rather, and as Plaintiff points out, the Court is tasked with determining whether Defendants have violated the terms of their permits or are releasing pollutants into a body of water in violation of the CWA. Those are exactly the types of things that Congress have determined federal courts competent to decide.

No doubt, TDEC has expertise in environmental matters. However, "[w]hen 'the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility.'" Baykeeper v. NL Ind., Inc., 660 F.3d 686, 691 (3rd Cir. 2011) (citation omitted). Applying Burford abstention, "or, what amounts to the same thing. . . primary jurisdiction" in such circumstances "would be an end run around" the CWA because "Congress has specified the conditions under which the pendency of other proceedings bars suit under" the CWA. PMC, Inc. v. Sherwin–Williams Co., 151 F.3d 610, 619 (7th Cir.1998) (so stating regarding the Resource Conservation and Recovery Act); see also,

5

Baykeeper 660 F.3d at 695 (stating that PMC's "logic also applies to CWA actions, since that statute similarly provides for citizen suits except under specific, enumerated circumstances"). Accordingly, the Court will not abstain or enter a stay.

### III.

Defendants also argue that "Plaintiff's Complaint should be dismissed because its vague and conclusory allegations regarding injury are not sufficient to establish the standing required to maintain this action." (Docket No. 16 at 11). The Court disagrees.

"Trained on 'whether the plaintiff is [a] proper party to bring [a particular lawsuit,]' standing is '[o]ne element' of the Constitution's case-or-controversy limitation on federal judicial authority, expressed in Article III of the Constitution.'" Ariz. State Legislature v. Ariz. Ind. Redistricting Comm'n, 135 S.Ct. 2652, 2663 (2015) (brackets in original) (quoting, Raines v. Byrd, 521 U. S. 811, 818 (1997)). "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc., 528 U.S. 167, 181 (2000).

The constitutional requirements for standing were explained by the Supreme Court in Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992):

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

(internal quotation marks, citations, and footnote omitted). "In requiring a particular injury, the Court [in Lujan] meant that 'the injury must affect the plaintiff in a personal and individual way.'" Ariz. Christian Sch. Tuition Org. v. Winn, 131 S.Ct. 1436, 1442 (2011) (quoting Lujan, at 560 n.11).

Plaintiff, Public Employees for Environmental Responsibility ("PEER"), alleges that it is "a national non-profit alliance of local, state, and federal scientist, law enforcement officers, land managers, other professionals, and members of the general public" who "have preservation and conservation interests in ensuring the health of Tennessee's streams and wetlands[.]" (Docket No. 1, Complaint ¶¶ 6-7). More specifically, the Complaint alleges that "PEER has members who live on Stoners Creek downstream of The Paddocks Development, paddle the creek regularly, enjoy observing the wildlife that depends on the creek, participate in regular creek cleanups, and perform stream surveys (including invertebrate sampling) on Stoners Creek a few times per year." (Id. ¶ 7). Other PEER members are alleged to "live near and/or use bodies further downstream, such as the Cumberland River." Id.

Further, and notwithstanding Defendants' claim to have taken corrective action, PEER alleges that a number of violations of the mitigation conditions and permits continue. In fact, on November 26, 2014, PEER members visited the Paddocks site and observed what appeared to be "[a]n unnatural orange growth or precipitate" that was "leaching from and/or cause by fill material" downstream from the permit area. (Id. ¶¶ 27 & 28). For their causes of action, PEER alleges that Defendants' failure to comply with the mitigation conditions required by its permits and their discharge of pollutants into waterways continues to impact its members.

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [a court] 'presum[es] that general allegations

7

embrace those specific facts that are necessary to support the claim.'" Friends of the Earth, 528 U.S. at 181 (quoting Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 889 (1990)). The allegations set out in the Complaint in this case are sufficient to satisfy each of Lujan's required showings.

First, the Complaint fairly alleges that PEER members who use nearby waterways have suffered the invasion of a legally protected bright because "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity."). Id. at 183 (quoting Sierra Club v. Morton, 405 U.S. 727, 735 (1972))  Second, Plaintiffs allege that the adverse impact on downstream waterways has been caused by Defendants' failure to comply with the permits and their continued discharge of pollutants.  Third, PEER requests (among other things) that it be granted declaratory and injunctive relief which would require Defendants to restore the waterways and stop the ongoing discharge of pollutants.  Therefore, dismissal for lack of jurisdiction is unwarranted.

## IV.

On the basis of the foregoing, Defendants' Motion to Dismiss, or in the Alternative, Motion to Stay will be denied.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE